## Hainsworth v. Mount

*Bennett & Bricklin,* for plaintiff.
*P. M. Goldstein,* for defendant.

BELOFF, J., November 8, 1952.—We are considering defendant's petition for approval of certain interrogatories under Rule 4005 of the Rules of Civil Procedure dealing with discovery and filed as a sequel to a counterclaim in an action in trespass.

The interrogatories propounded by defendant requiring discussion are herewith set forth:

"2. State whether plaintiff had any physical defects at the time of the accident in question.

"(a) State whether plaintiff wears eyeglasses.

"(b) State whether plaintiff was wearing eyeglasses at the time of the accident.

"3. State the speed at which plaintiff's vehicle was traveling immediately prior to the time of the accident.

"4. State whether plaintiff's view was obstructed in any way immediately prior to the accident.

"(a) If so, state how plaintiff's view was obstructed.

"(b) What was the distance between the obstruction and plaintiff's automobile?

"5. State the distal relationship between plaintiff's motor vehicle and defendant's motor vehicle when defendant's motor vehicle was first observed by plaintiff.

"6. State the distance of plaintiff's automobile from the curb of Fairview Circle at the time of the accident.

"7. State the parts of plaintiff's motor vehicle which came in contact with defendant's motor vehicle. State the parts of defendant's vehicle that were involved in the collision.

"8. State precisely all the items of damage alleged to have been suffered by plaintiff by reason of defendant's alleged negligence.

"9. State whether plaintiff's automobile was repaired. If so, state the name and address of the person who made the repairs, and state the amount of the charges for said repairs.

"10. State in what way defendant's automobile was not under proper control.

"11. State plaintiff's rights which were not heeded by defendant.

"12. State the particulars of defendant's improper application of his brakes.

"13. State the particulars of the excessive speed at which defendant operated his motor vehicle.

"14. State what sections of the Motor Vehicle Code of the State of New Jersey defendant violated, and state the manner in which the violations occurred."

The objections to the petition and the interrogatories are threefold, viz.:

1. The petition fails to set forth the grounds for the order prayed for. This objection is inapplicable herein, has no merit, and will be given no further consideration.

2. Plaintiff objects that the information sought is already within the knowledge of or available to defendant, and

3. The facts which petitioner seeks to discover are not necessary to prepare any pleadings or to make out a prima facie case.

Petitioner buttresses these objections by invoking Rule 4011 of the Rules of Civil Procedure which limits the scope of discovery and provides, inter alia, that "No discovery or inspection shall be permitted which . . . (c) would disclose facts or the existence or location of tangible things, other than the identity and whereabouts of witnesses, which . . . (c-3) are known to the petitioner, or the means of obtaining knowledge of which he can be reasonably expected to have; (c-4) are not necessary to prepare the pleadings or prove a prima facie claim or defense of the petitioner."

Apparently the Procedural Rules Committee of the Pennsylvania Bar Association anticipated considerable difficulty with regard to these subdivisions of sec-

tion 4011, and reference thereto is made in the January 1949 Quarterly of the Pennsylvania Bar Association, page 166, in an article entitled "Are We Afraid of Pre-Trial Discovery?"

In the case of Klosterman et ux, v. Clark et al, 78 D. & C. 263, President Judge MacNeille meets part of this problem with the following language:

"We are of the opinion that the new rules are to receive a liberal usage in the trial courts so that the bench and bar may preview their effect upon our trial procedures. We cannot ignore the history of these rules whereby the tentative drafts submitted to the bench and bar became increasingly more liberal until they reached their present form. . . .

"Defendants suggest that, since certain facts are set forth in the complaint, they must already be within the plaintiff's knowledge. It is not to be presumed that, because a complaint or answer sets forth a cause of action or defense, no inquiry may be made as to the facts averred. Averments made on information and belief may be provable by facts within the possession of the opposing party. It is the design of the discovery rules that pertinent facts shall be made available before trial."

Pertinent facts have an insoluble relationship to relevancy, and the determination of relevancy in the pretrial inquiries should not be met with too much despatch upon the possible theory that an answer may be irrelevant. In such instances their pertinency and relevancy should not be anticipated but ought to be governed by the rulings of the trial court.

Plaintiff objects that interrogatories 3, 4, 6 and 7 are all matters of which defendant has or should have knowledge.

It is not intended by these rules that the case be tried in all particulars by the preliminary inquiries

nor to give judicial sanction to possible traps into which the deponent might fall.

In the matter of Hickman, Administrator, v. Taylor et al, 329 U. S. 495 (1947), Mr. Justice Murphy discusses the Federal procedure relating to discovery and therein makes the wise and pithy observation that "mutual knowledge of all the relevant facts . . . is essential to proper litigation."

With this generalization, of course, no lawyer can quarrel. However, when confronted with specifics and the restrictions promulgated by the rules themselves, the resolution of this philosophical view is not as terse or simple.

The promulgation of the Rules of Civil Procedure dealing with discovery has generated widespread controversy among the members of the legal profession. It has been said that the parent of our latest rules with regard to discovery is found in the Federal Rules of Civil Procedure. Attempts with lower court success have there been made without purported necessity therefor to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties where they fell outside the arena of privileged communications. The Supreme Court of the United States, in overruling the lower court and repelling this invasion of a lawyer's sanctum, has gone to the extent of saying,

"Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had": Hickman, Administrator, v. Taylor et al., 329 U. S. 495, 511.

On the other hand, the English courts have developed a concept of privilege to include all documents prepared by or for counsel with a view to litigation:

Odgers on Pleading and Practice, 12th ed., 1939, page 264.

The problems created by the rules on discovery must be resolved with a view of clarifying the issues and as a means of determining the facts or information as to the existence or whereabouts of facts relative to those issues and they must not be so used as to become instruments of abuse. It is inconceivable that the discovery rules as adopted contemplated that a lawyer's files and all their contents should be opened to the free trespass of his adversary. These rules designed to aid the litigants and the courts should not be so used as to boomerang and provide wars of deceit rather than a light for truth. At the same time the ancient cry of "fishing expedition" loses much of its force because as was said in Pike and Willis, "Federal Discovery in Operation," 7 University of Chicago Law Review 297, 303:

"One of the chief arguments against the 'fishing expedition' objection is the idea that discovery is mutual—that while a party may have to disclose his case, he can at the same time tie his opponent down to a definite position."

And it should always be borne in mind that as it tends to introduce into the evidence through procedural measures or otherwise any data or statements without the corresponding shield of cross-examination, it would in itself violate the foremost searcher of truth known to the law; to wit, cross-examination. The facts and matters within the possession of an adversary but free from the protective armor of privileged communication might yet very well be guarded from the assaults of procedural rules on discovery when strong public policy is violated.

We do not seek to give the rules either a strict or liberal interpretation but rather to give them the intent that the framers and adopters, in our view, had

determined. If a fair evaluation of these rules should make it advisable either to restrict their application or further open the door for pretrial maneuvers, the present rules might be amended or enlarged to meet the test of trial experience.

Plaintiff further contends that "The information sought by the interrogatories is not necessary for the defendant to make out a prima facie case." We know of no mathematical formula determinative of what a prima facie case is. When a proponent sets forth facts of sufficient quantum and quantity so that unless a countervaling response was made thereto he would be entitled to a verdict or a judgment, it may be said that a prima facie case has been made out. It has also been said that a prima facie case is one in which the evidence is of sufficient gravity to demand that the adversary respond thereto.

For us to determine what would be required to establish a prima facie case would be an expression of a judicial guess.

We sustain objection to interrogatory 2. We also sustain objections to interrogatories 7, and 10 to 14 inclusive, as being in the one part matters almost exclusively within the knowledge of defendant by the very nature of the pleadings, or at least on the face of things, as well known to defendant as to plaintiff, and in the other part they seek conclusions and conclusions of law which are not properly the subject matters of interrogatory inquiries in the circumstances.

For the reasons set forth we overrule objections to interrogatories 2(a), 2(b), 3, 4, 5, 6, 8, and 9, and make the following

### Order

And now, to wit, November 8, 1952, upon presentation of the foregoing petition of defendant, Louis Mount, in the foregoing action, seeking approval of the written interrogatories directed to plaintiff, which

were attached thereto, it is ordered and decreed that plaintiff file a verified answer to interrogatories 1, 2(a), 2(b), 3, 4, 5, 6, 8 and 9 within 20 days after service of a copy of the interrogatories and of this order upon it or its counsel of record.